# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **United States of America,** |
| Plaintiff, |
| v. |
| **$215,587.22 in U.S. Currency et al.**, |
| Defendants. |

Case No. 17-cv-00853 (CRC)

## OPINION AND ORDER

Claimants in this civil forfeiture action, Joseph and Andrea Szlavik, have moved for a protective order to shield them from answering special interrogatories issued by the Government pursuant to Rule G(6) of the Supplemental Federal Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions. The Government routinely propounds Rule G(6) interrogatories in forfeiture cases to explore whether putative claimants have standing to challenge the forfeiture. The Szlaviks argue that (1) the special interrogatories are improper in this case because their standing has already been established through sworn facts contained in both the Government's verified complaint and their own verified ownership claims; and (2) the interrogatories are overly broad and burdensome. The Court will grant the motion. Although the Government has identified two colorable concerns regarding the Szlaviks' present standing to challenge the forfeiture, the interrogatories as drafted go beyond the standing issues the Government has identified. The Court will therefore quash the propounded interrogatories but will permit the Government to re-issue interrogatories that are more tailored to the standing issues identified. The Government may do so at any time before discovery closes, as authorized by Supplemental Rule G(6).

## I. Background

The Government initiated this forfeiture action on May 9, 2017 by filing a verified complaint for forfeiture *in rem* against $475,405.21 in U.S. currency. Verified Complaint ("Compl.") ¶ 1. According to the verified complaint, the Government seized these funds from nine separate bank accounts "held in the name of" Joseph Szlavik or, in the case of two of the accounts, businesses which he operated and controlled. Id. ¶¶ 2, passim. One of the personal accounts, held at Wells Fargo, is alleged to be owned jointly by Joseph and his ex-wife Andrea Szlavik. Id. ¶ 3. The complaint goes on to allege that between 2010 and 2013, Joseph Szlavik used some of these accounts to run an "unlicensed international money transmitting business" in violation of 18 U.S.C. § 1960; that he charged clients for that service (most notably the President of Gabon and his family); and that the monies in all of the accounts constitute proceeds from the illegal business. Id. ¶¶ 1, 13-19. The funds were originally seized by the Department of Homeland Security in 2013.

On June 14, 2017, both Joseph and Andrea Szlavik asserted an interest in the defendant property by filing verified ownership claims, and on July 5, 2017, they moved to dismiss the verified complaint. About two weeks later, instead of responding to the Szlaviks' motion to dismiss, the Government filed a notice of intent to serve a set of special interrogatories pursuant to Rule G(6) of the Supplemental Rules. The interrogatories request information about each of the nine accounts, including facts supporting ownership, explanations of how and why the funds were obtained, and numerous other questions about the Szlaviks' relationship with various business entities and associates. Rather than responding to the interrogatories, the Szlaviks filed the present motion seeking protection "from the unnecessary and unduly burdensome special interrogatories the government served on them." Mot. Protective Order 18.

## II. Standard of Review

Supplemental Rule G establishes the procedures for forfeiture actions *in rem* arising from a federal statute. Fed. R. Civ. P. Supplemental Rule G(1). Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." The advisory committee notes explain that Rule G(6) allows "the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing." 2006 Advisory Committee Notes to Fed. R. Civ. P. Supplemental Rule G(6)(a). Answers or objections to the interrogatories must be served within 21 days. Fed. R. Civ. P. Supplemental Rule G(6)(b).

The Federal Rules of Civil Procedure apply to proceedings governed by the Supplemental Rules. Fed. R. Civ. P. Supplemental Rule A(2). Rule 26(c) allows the Court to issue protective orders to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." A district court can enter a protective order upon a showing of "good cause." United States v. Microsoft Corp., 165 F.3d 952, 953 (D.C. Cir. 1999).

## III. Analysis

Claimants in a civil forfeiture action must establish both Article III and statutory standing. United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency, 859 F.3d 1085, 1089–90 (D.C. Cir. 2017). A claimant establishes statutory standing simply by complying with the jurisdictional procedural requirements of Rule G(5).[1] For Article III

---

[1] The Government argues that a claimant only has statutory standing if he complies with *both* Rule G(5) *and* Rule G(6). Opp'n Mot. Protective Order 6. Courts tend to focus on claimants' compliance with G(5)—the filing of a verified claim—as the crux of statutory standing. See United States v. 17 Coon Creek Rd., Hawkins Bar California, Trinity Cty., 787 F.3d 968, 972 (9th Cir. 2015) (failure to comply with Rule G(6) did *not* "vitiate [claimant's] statutory standing.")

3

standing, the bar "at the initial stages of a civil forfeiture proceeding is low." United States v. Any & All Funds on Deposit in Account No. XXXXX-XXXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom, 87 F. Supp. 3d 163, 167 (D.D.C. 2015). Claimants need only allege a "colorable claim on the property," $17,900.00, 859 F.3d at 1090 (internal citation omitted), and facts alleging an ownership interest either in the verified complaint or in the verified claim are sufficient, see HSBC Bank, 87 F. Supp. 3d at 167; United States v. $196,969.00 U.S. Currency, 719 F.3d 644, 646 (7th Cir. 2013).

While minimal at the pleading stage, however, the standing requirement escalates somewhat as the case progresses. To survive a motion for summary judgment, for example, claimants must "present some evidence of ownership beyond the mere assertion." $17,900.00, 859 F.3d at 1091 (quoting United States v. $133,420, 672 F.3d 629, 639 (9th Cir. 2012)) (internal quotation marks omitted); see also United States v. $239,400, 795 F.3d 639, 642–43 (7th Cir. 2015) (same); United States v. $148,840, 521 F.3d 1268, 1276 (10th Cir. 2008) (same). Additionally, by the summary judgment stage, the claimant "can no longer rest on [] 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." $17,900.00, 859 F.3d at 1091 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

---

(emphasis added). On the other hand, courts have said that the "term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court." United States v. 8 Gilcrease Lane, Quincy Florida 32351, 641 F. Supp. 2d 1, 5-6 (D.D.C. 2009). Neither party disputes that Claimants have complied with Rule G(5), and the Court need not yet decide whether they will still have statutory standing if they fail to comply with the interrogatory-response requirements of Rule G(6).

Again, the Government propounded its G(6) interrogatories in lieu of opposing the Szlaviks' motion to dismiss. The Szlaviks contend that they have met the low burden of establishing standing at the pleading stage because the Government alleges in its verified complaint, and Claimants confirm in their verified claim, that assets were seized from accounts opened, owned and controlled by Claimants. Mot. Protective Order 4. As a result, they argue, Rule G(6) interrogatories, which are solely intended to uncover standing issues, are unnecessary and answering them would be unduly burdensome. The Government responds that whether the Szlaviks have met the low burden of standing at the pleading stage is irrelevant to the propriety of its Rule G(6) interrogatories because, under the rule, the Government may propound them "at any time after a claim is filed and before discovery in closed." The Court agrees. Because the Government is not limited to when it may issue Rule G(6) interrogatories, having standing to challenge a forfeiture case with a motion to dismiss does not preclude the Government from issuing G(6) interrogatories early in the case to test whether a claimant has standing on the merits. Claimants cite no contrary authority.

But that does not end the story. The Szlaviks also contend that their standing has been established under the somewhat more stringent "some evidence" standard that applies at the summary judgment stage of forfeiture actions. $17,900.00, 859 F.3d at 1092. This argument is more persuasive. Through its verified complaint, the Government avers that Joseph Szlavik established, owns, and controls each of the nine accounts. See, e.g., Compl. ¶¶ 2, 10. The Szlaviks confirm their dominion over the accounts in their verified claim. Ownership and control of funds are hallmarks of standing in forfeiture cases. See HSBC Bank, 87 F. Supp. 3d at 166–67.[2] And

---

[2] This is not a case like HSBC Bank where the Government alleges that the nominal account holder is a straw owner for a third party who actually controls the funds. See id. The theory of the

there appears to be no factual dispute as to whether the Szlaviks owned and controlled the funds at issue here. With their ownership and control acknowledged by Government, asking Claimants about, for example, the source of the funds and the circumstances of their ownership is unnecessary for the purpose of testing standing.[3] Such questions are therefore properly stricken from the interrogatories.

The Government has nevertheless identified two relevant areas of inquiry about the Szlaviks' standing that justify at least some discovery through Rule G(6) interrogatories. The first involves the timing of the Government's complaint, which only discusses the Szlaviks' ownership interest in the property up until 2013. At oral argument, Government counsel explained the need to verify that Claimants currently have an ownership interest in the property. 9/13/17 Hearing Tr. at 22 ("The complaint was not updated to reflect any sort of current ownership interest . . . ."). Second, the Government is interested in whether any agreements between the Szlaviks stemming from their apparent divorce may have affected their respective ownership interests in the funds. Id. at 24. This concern is implicated by the one account the Szlaviks jointly own, but could in theory affect ownership of the other accounts as well. The Court will therefore permit the Government to propound a new set of interrogatories that are tailored to exploring these specific standing issues.

---

Government's case, rather, is that the funds represent the profits of illegal activity, which Mr. Szlavik controlled and used freely for his personal benefit.

[3] Specifically, the Government's special interrogatory number 1 with respect to Claimant Joseph Szlavik contains subparts (b)-(d), which ask about how the relevant funds were obtained and why they were obtained—two issues that do not implicate standing in this case. The same is true for interrogatories that ask about Claimants' employment history (number 13) and relationships with various companies (numbers 10 through 12 and 14 through 19).

6

## IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that [11] Claimant's Motion for a Protective Order is GRANTED.

**SO ORDERED**.

                                                       CHRISTOPHER R. COOPER
                                                     United States District Judge

Date: October 11, 2017